**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| IN RE: MI WINDOWS AND DOORS, INC. PRODUCTS LIABILITY LITIGATION | MDL No. 2333<br>No. 2:12-mn-00001-DCN |
| JENNIFER AND SCOTT MCGAFFIN,<br>Plaintiffs,<br>vs.<br>MI WINDOWS AND DOORS, INC.<br>Defendant. | No. 2:12-cv-02860-DCN<br><br>**ORDER** |

This matter comes before the court on defendant MI Windows and Doors, Inc.'s (MIWD) motion to dismiss the complaint filed by Jennifer and Scott McGaffin (the McGaffins) and to strike the McGaffins' request to estop MIWD from relying on a statute of limitations defense. The court grants in part and denies in part the motion to dismiss and motion to strike.

## I. BACKGROUND

The McGaffins filed a complaint in the United States District Court for the District of Kansas on July 23, 2012. The case was transferred to this court by order of the Judicial Panel on Multidistrict Litigation on October 3, 2012. On October 24, 2012, MIWD filed a motion to dismiss.

In their complaint, the McGaffins allege that their residence, built in 2008, has windows that "were installed prior to the purchase of their residence" and were manufactured and supplied by MIWD. Compl. ¶¶ 3-4, 38. The McGaffins further claim

1

that MIWD warranted, marketed, and advertised that its windows were fit for their ordinary purposes and free from defects, but that the windows were in fact defective in design.  Id. ¶ 5-6.  The windows allegedly permit "leakage resulting in the formation of mineral deposits, algae, and microbial growth at the location of the leaks, and consequential damages to other property, the adjoining finishes and walls of the residences."  Id. ¶¶ 7, 48; see also id. ¶¶ 10, 36, 38, 51.

The McGaffins assert claims for unfair and deceptive trade practices in violation of the Kansas Consumer Protection Act, negligence, breach of implied warranty of merchantability, breach of implied warranty of fitness for a particular purpose, fraudulent misrepresentation, fraudulent concealment, unjust enrichment, and declaratory relief, and additionally plead that MIWD should be estopped from relying on any statute of limitations defense because it has "known of the defect in the Windows for years and has concealed [it] from owners."  Id. ¶ 57.

## II.  STANDARDS

### A.  Applicable Law

This case is predicated on diversity jurisdiction and was filed in federal court, so it is governed by state substantive law and federal procedural law.  See Jones v. United Parcel Serv., 674 F.3d 1187, 1195 (10th Cir. 2012).  For diversity cases that are transferred in a MDL, "the law of the transferor district follows the case to the transferee district."  Manual for Complex Litigation Fourth § 20.132.  Therefore, this court must apply Kansas substantive law and federal procedural law.

### B. Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss for "failure to state a claim upon which relief can be granted." When considering a Rule 12(b)(6) motion to dismiss, the court must accept the plaintiff's factual allegations as true and draw all reasonable inferences in the plaintiff's favor. See E.I. du Pont de Nemours & Co. v. Kolon Indus., 637 F.3d 435, 440 (4th Cir. 2011). But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

On a motion to dismiss, the court's task is limited to determining whether the complaint states a "plausible claim for relief." Id. at 679. A complaint must contain sufficient factual allegations in addition to legal conclusions. Although Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," "a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). "Facts pled that are 'merely consistent with' liability are not sufficient." A Soc'y Without a Name v. Virginia, 655 F.3d 342, 346 (4th Cir. 2011) (quoting Iqbal, 556 U.S. at 678).

### III. DISCUSSION

MIWD seeks to dismiss all counts of the complaint and moves to strike the McGaffins' request that MIWD be estopped from relying on any statute of limitations defense.

### A. Motion to Strike

In their complaint, the McGaffins plead that MIWD is "estopped from relying on any statutes of limitation or repose by virtue of its acts of fraudulent concealment." Compl. ¶ 57. MIWD moves to strike this pleading from the complaint to the extent it applies to the McGaffins' non-fraud claims.

Kansas's approach to equitable tolling based on fraudulent concealment has been, at times, inconsistent. In Pike v. City of Mission, 731 F.2d 655, 658 (10th Cir. 1984), the Tenth Circuit stated, "Under Kansas law, fraudulent concealment does not toll the statute of limitations unless the plaintiff's claim for relief is grounded on fraud." In 1993, the Tenth Circuit found, "that statement of the law no longer appears to be true." Baker v. Bd. of Regents, 991 F.2d 628, 633 (10th Cir. 1993) (citing Ferrell v. Ferrell, 719 P.2d 1, 5 (Kan. Ct. App. 1986)). However, in 1996, the Kansas Supreme Court decided that "the doctrine [of fraudulent concealment] only tolls the time in which a fraud action may be filed if the plaintiff's claim for relief is validly grounded in fraud." Bonin v. Vannaman, 929 P.2d 754, 762 (Kan. 1996); see also Freebird, Inc. v. Merit Energy Co., --- F. Supp. 2d. ----, 2012 WL 3143870, at *9 (D. Kan. Aug. 1, 2012) ("Although the Kansas Supreme Court has not been entirely consistent in applying the fraudulent concealment doctrine to toll the statute of limitations, it has repeatedly and most recently held that it only tolls the statute of limitations on fraud claims.").

MIWD is correct in its contention that under current Kansas law, fraudulent concealment can only toll a statute of limitations when a claim for relief is grounded on fraud. For this reason, the McGaffins may plead that MIWD should be estopped from relying on a statute of limitations defense to their claims for fraudulent concealment and

fraudulent misrepresentation. However, the McGaffins cannot seek equitable tolling of the statute of limitations on their non-fraud based claims for unfair trade practices, negligence, breach of implied warranties, unjust enrichment, and declaratory relief, so the court will strike the allegation that MIWD is etopped from relying on a statute of limitations defense as to these claims.[1]

### B. Unfair Trade Practices

MIWD next moves to dismiss the McGaffins' claim for unfair trade practices as barred by the statute of limitations.

The Kansas Consumer Protection Act (KCPA) carries a three-year statute of limitations. Kan. Stat. Ann. § 60-512. "A cause of action accrues under the KCPA on the date of the alleged deceptive act or practice regardless of when the alleged deception is discovered." Hemmen v. Terminix Int'l Co., No. 92-1468, 1993 WL 3022255, at *3 (D. Kan. July 14, 1993); see In re Long, No. 09-12827, 2011 WL 976460, at *8 (Bankr. D. Kan. Mar. 1, 2011) (same); Four Seasons Apts., Ltd. v. AAA Glass Serv., 152 P.3d 101, 105 (Kan. Ct. App. 2007) (same).

The McGaffins state that the windows were installed in their home in 2008, Compl. ¶ 38, so the statute of limitations would have expired sometime in 2011. The

---

[1] In other cases in this MDL, the court denied MIWD's motion to strike on the basis that it was premature and unnecessary. See, e.g., Wani v. MI Windows & Doors, Inc., No. 12-1255, 2012 WL 4482928, at *6 (D.S.C. Sept. 27, 2012) ("MIWD has not moved to dismiss the Wanis' claims on a statute of limitations basis. The court finds it unnecessary to strike the allegations regarding equitable tolling from the amended complaint."). Here, where MIWD has actually asserted a statute of limitations defense and Kansas law prevents parties from moving for equitable tolling on non-fraud claims, it is necessary to limit the McGaffins' request for estoppel. As to the McGaffins' fraudulent misrepresentation and fraudulent concealment claims, MIWD does not move to dismiss on a statute of limitations basis. Although Ralph Waldo Emerson warned that a foolish consistency is the hobgoblin of little minds, this court, like in the other cases, finds it unnecessary to strike the estoppel allegations regarding these claims at the motion to dismiss stage.

McGaffins did not file their complaint until 2012. They rely on the "discovery rule" to save their claim, citing to Alexander v. Certified Master Builder Corp., 43 F. Supp. 2d 1242 (D. Kan. 1999). This reliance is misplaced. In Alexander, the district court held that a claim brought under the KCPA accrued when the plaintiff "discovered, or reasonably should have discovered, the alleged misrepresentations." Id. at 1249. The Alexander decision has been squarely rejected by subsequent courts. See Four Seasons, 152 P.3d at 104 ("[Plaintiff] relies upon Alexander . . ., in which the court read a discoverability provision into the statute . . . . We note that this theory was rejected by our court . . . .").

Because the statute of limitations has run on the McGaffins' KCPA claim, it is dismissed.

### C. Negligence

MIWD next moves to dismiss the McGaffins' claim for negligence as barred by the economic loss doctrine.

The economic loss doctrine is a "judicially created doctrine that sets forth the circumstances under which a tort action is prohibited if the only damages suffered are economic losses." David v. Hett, 270 P.3d 1102, 1105 (Kan. 2011) (internal quotation marks omitted). "Simply stated, a buyer of defective goods cannot sue under a tort theory when the injury merely consists of damage to the goods themselves." Bldg. Erections Servs. v. Walton Const. Co., 219 P.3d 1243 (Kan. Ct. App. 2009) (table). "On the other hand, recovery for physical damage a product caused to 'other property' is not precluded by the economic loss doctrine." N.W. Ark. Masonry, Inc. v. Summit Specialty Prods., Inc., 31 P.3d 982, 987 (Kan. Ct. App. 2001).

While courts in Kansas take a "relatively broad view of what constitutes the relevant product for purposes of the economic loss doctrine," Lexington Ins. Co. v. W. Roofing Co., 316 F. Supp. 2d 1142, 1148 (D. Kan. 2004), the threshold issue is whether the doctrine even applies. The Kansas Court of Appeals has stated that while "consumers are not typically in privity of contract with the manufacturer when they purchase products from retailers or wholesalers, . . . the economic loss rule applies equally to consumer purchasers." N.W. Ark. Masonry, 31 P.3d at 988-89. The court in Northwest Arkansas Masonry relied on Jordan v. Case Corp., 993 P.2d 650, 652 (Kan. Ct. App. 1999), in which the court ruled that the economic loss doctrine applies "equally to a consumer of defective goods as well as to commercial buyers of defective goods." The court reasoned in part that in consumer transactions, the economic loss doctrine "protects a party's freedom to allocate economic risks by contract," and in that case, the consumer-purchaser of a combine had "bargained for the combine at a certain price and with certain warranty provisions." Id.; see also Hett, 270 P.3d at 1110 (noting that the Jordan court "expanded the economic loss doctrine to include defective products purchased in consumer transactions" in part because "the plaintiff in the case had engaged in his own contract negotiations in purchasing the combine and had insurance"); Louisburg Bldg. & Dev. Co. v. Albright, 252 P.3d 597, 622 (Kan. Ct. App. 2011) (stating that one policy "driving the expansion of the doctrine" is "protecting parties' expectations with respect to their bargained-for limited liability"); Prendiville v. Contemporary Homes, Inc., 83 P.3d 1257, 1260 (Kan. Ct. App. 2004) (stating that the economic loss doctrine is "designed to prevent a party from asserting a tort remedy in circumstances governed by the law of contracts").

In this case, the McGaffins do not allege that they contracted with MIWD; instead, they claim that the windows manufactured by MIWD "were installed prior to their purchase of their residence." Compl. ¶ 4; see also id. ¶ 38. As a result, it does not appear that courts in Kansas would apply the economic loss doctrine to bar the McGaffins' negligence claim. See Rinehart v. Morton Bldgs, Inc., 240 P.3d 626, at *4 (Kan. Ct. App. 2010) (table) ("[Plaintiff] fails to cite any case law to support its position that the economic loss doctrine can be applied to bar an entity that is not a party to the contract from recovering damages in tort. We decline Morton's invitation to so extend the application of the economic loss doctrine in Kansas."). At a minimum, the McGaffins have asserted a plausible negligence claim that will be permitted to survive a motion to dismiss.

### D.  Breach of Implied Warranty

MIWD next moves to dismiss the McGaffins' claims for breach of implied warranty.

First, MIWD argues that no implied warranties were created because there was no sale of "goods," but only a sale of "real estate," because the McGaffins admit that the windows were installed prior to their purchase of the residence. Implied warranties are created by UCC Article 2, as adopted in Kansas. The implied warranties of merchantability and fitness for a particular purpose specifically apply to "transactions in goods." Kan. Stat. Ann. §§ 84-2-313, 84-2-314. Goods are defined as "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale." Kan. Stat. Ann. § 84-2-105(1). At this stage, MIWD's argument fails because there is a question of fact whether the windows were readily

moveable at the time of the purchase of the home.  See Johnson v. MI Windows & Doors, Inc., No. 11-167, 2012 WL 5408563, at *5 (D.S.C. Nov. 6, 2012).

Next, MIWD argues the implied warranty claims fail because the McGaffins do not allege they suffered "personal injuries" and thus lack privity.  Under Kan. Stat. Ann. § 84-2-318, implied warranties extend to "natural persons who may reasonably be expected to use the goods and who suffer personal, as opposed to economic, injury." Privity requirements for implied warranty claims have been abolished when the claims involve consumer transactions.  See Kan. Stat. Ann. § 50-639(b) ("Notwithstanding any provision of law, no action for breach of warranty with respect to property subject to a consumer transaction shall fail because of a lack of privity between the claimant and the party against whom the claim is made."); Gonzalez v. Pepsico, Inc., 489 F. Supp. 2d 1233, 1246 (D. Kan. 2007) ("Section 50-639(b) of the KCPA has abolished any privity requirement in an action for breach of the implied warranty of merchantability involving a consumer transaction under Kansas law.").  As such, MIWD's argument fails.

Finally, MIWD contends that any implied warranties have been disclaimed.  But Kan. Stat. Ann. § 50-639(c) states, "A supplier may limit the supplier's implied warranty of merchantability and fitness for a particular purpose with respect to a defect or defects in the property only if the supplier establishes that the consumer had knowledge of the defect or defects, which became the basis of the bargain between the parties."  MIWD has not established that the defects formed the basis of a bargain with the McGaffins; to the contrary, the McGaffins claim that they lacked knowledge of the defects in the windows when they purchased their home.  See Golden v. Den-Mat Corp., 276 P.3d 773, 800 (Kan. Ct. App. 2012).  This argument fails.

For these reasons, the court denies the motion to dismiss the claims for breach of implied warranty.

### E.  Fraudulent Misrepresentation

MIWD next moves to dismiss the McGaffins' claim for fraudulent misrepresentation, arguing that it is not pled with particularity under Federal Rule of Civil Procedure 9(b).

In Kansas, the elements of a claim for fraudulent misrepresentation "include an untrue statement of fact known to be untrue by the party making it made with the intent to deceive or with reckless disregard for the truth upon which another party justifiably relies and acts to his or her detriment." Alires v. McGehee, 85 P.3d 1191, 1195 (Kan. 2004).  Under Rule 9(b), to survive a motion to dismiss, an allegation of fraud must "set forth the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof." Schwartz v. Celestial Seasonings, Inc., 124 F.3d 1246, 1252 (10th Cir. 1997).  "In other words, the plaintiff must set out the 'who, what, where, and when' of the alleged fraud." Plastic Packaging Corp. v. Sun Chemical Corp., 136 F. Supp. 2d 1201, 1203 (D. Kan. 2001).

Here, the McGaffins do not even allege that they saw, heard, or relied to their detriment on the allegedly fraudulent misrepresentations disseminated by MIWD, other than through two conclusory allegations.  See Compl. ¶¶ 101-02.  However, dismissal is not necessarily warranted on this ground, as "it is clear under Kansas law a third party may have an action for fraud without any direct contact with and without having received any direct misrepresentations from the defrauding party." DeBoer v. Am. Appraisal Assocs., Inc., 502 F. Supp. 2d 1160, 1168 (D. Kan. 2007) ("Kansas courts have held that

a plaintiff may recover for fraudulent misrepresentation where reliance occurs indirectly."); Citizens State Bank v. Gilmore, 603 P.2d 605, 610 (Kan. 1979) ("The fact that the misrepresentation consisted of a concealment of material facts rather than a material misstatement of facts does not alter the situation."). Still, "a person seeking to recover under an indirect reliance theory must demonstrate that his or her reliance on the original fraudulent misrepresentation would have been justifiable." DeBoer, 502 F. Supp. 2d at 1168.

While the law allows for indirect reliance, the McGaffins have not made particularized pleadings in accordance with Rule 9(b). For this reason, the court dismisses the claim.

### F. Fraudulent Concealment

MIWD next moves to dismiss the McGaffins' cause of action for fraudulent concealment, arguing that this claim is not pled with the requisite particularity. In Kansas, to bring a claim for fraudulent concealment or "fraud by silence," the plaintiff must allege that: (1) the defendant had knowledge of material information the plaintiff could not have discovered through reasonable diligence; (2) the defendant had a duty to communicate the information to plaintiff; (3) the defendant deliberately failed to communicate the information; (4) the plaintiff justifiably relied on the defendant to communicate the information; and (5) the plaintiff was injured as a result of the failure to communicate. See Burton v. R.J. Reynolds Tobacco Co., 397 F.3d 906, 910 (10th Cir. 2005).

Under Rule 9(b), a fraud claim must be pled with particularity, but "[t]hat rule is often applied more liberally to fraud by silence claims because it may be difficult to

11

identify when, where, and by whom a representation should have been made." Near v. Crivello, 673 F. Supp. 2d 1265, 1280 (D. Kan. 2009). A plaintiff must at least allege with particularity any "facts that would have prevented it from knowing [the concealed information] and must also allege that its ignorance was not the result of its own lack of diligence." Zurn Constructors, Inc. v. B.F. Goodrich Co., 746 F. Supp. 1051, 1056 (D. Kan. 1990).

MIWD contends that the complaint "contains only the conclusory allegation that MIWD engaged in 'acts of fraudulent concealment.'" Def.'s Mem. Supp. Mot. Dismiss 6 (quoting Compl. ¶ 57)). To the contrary, the complaint contains specific allegations that MIWD's windows are defective in that they permit water intrusion resulting in the formation of mineral deposits and damage to other property in the home, Compl. ¶ 7, that MIWD knew or should of known of these defects, id. ¶¶ 6, 108, and that MIWD failed to warn purchasers, installers, or users of the risks of failure, id. ¶ 14. Moreover, the McGaffins complain that their lack of knowledge of the window defects did not result from lack of diligence; instead, according to the McGaffins, MIWD "conceals its knowledge of repeated product defects in the Windows in the Class members' residences." Id. ¶ 33; see id. ¶ 110 ("The defect is latent and not something that Plaintiffs or Class members, in the exercise of reasonable diligence, could have discovered independently prior to purchase, because it is not feasible.").

That said, the allegations of the complaint are still lacking in that they fail to plausibly show that MIWD had a duty to communicate information to plaintiffs, which is the required second element of a fraudulent concealment claim. Under Kansas law, "[n]ondisclosure becomes fraudulent only when it violates a duty to disclose." Burton,

397 F.3d at 910. "A party has a duty to disclose material facts if the party knows that the other is about to enter into the transaction under mistake as to such facts, and that the other, because of the relationship between them . . . would reasonably expect disclosure of such facts." OMI Holdings, Inc. v. Howell, 918 P.2d 1274, 1300-01 (Kan. 1996). "A duty to disclose arises in two situations: (1) a contracting party who has superior knowledge, or knowledge that is not within the reasonable reach of the other party, has a legal duty to disclose information material to the bargain; and (2) parties in a fiduciary relationship must disclose material information to one another." Plastic Packaging, 136 F. Supp. 2d at 1205.

Here, plaintiffs rely on the first situation mentioned in Plastic Packaging; that is, they assert that MIWD had superior knowledge and thus had a duty to speak. Under this argument, the McGaffins must claim that MIWD "kn[ew] that [plaintiffs were] about to enter into the transaction under a mistake as to such facts, and that [plaintiffs], because of the relationship between them, the customs in the trade, or other objective circumstances, would reasonably expect a disclosure of such facts." OMI Holdings, 918 P.2d 1274. "While the Kansas Supreme Court has written about a duty arising from special knowledge, this has been explicitly connected . . . with the *relationship* between the parties, and whether there is a disparity of bargaining power or expertise reflected in the relationship." Meschke v. OrthAlliance, Inc., No. 01-1365, 2002 WL 1398635, at *2 (D. Kan. June 24, 2002).

The cases referencing the duty to speak based on "special knowledge" generally refer to a duty that arose because of a contractual relationship. See Plastic Packaging, 136 F. Supp. 2d at 1205 ("Kansas courts have indeed recognized that a party possessing

superior knowledge, who partakes to enter into a contract with a party who lacks such knowledge, has a duty to disclose material facts at the time of contracting."). Here, the McGaffins did not enter into any contractual relationship with MIWD. Contra Ensminger v. Terminix Int'l Co., 102 F.3d 1571, 1574 (10th Cir. 1996) (upholding a jury's finding that a duty to speak arose from a contractual relationship because the sellers of a home hired Terminix to check for termites, and there was an "unequal relationship in which the claimant seeks particular information from a specialist upon which the recipient intends to rely or act"). For these reasons, the court dismisses the fraudulent concealment claim for failure to plead "with particularity" the circumstances giving rise to MIWD's duty to speak and failure to do so.

### G. Unjust Enrichment

MIWD next moves to dismiss the McGaffins' claim for unjust enrichment. "The basic elements [of] a claim based on a theory of unjust enrichment are threefold: (1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge of the benefit by the defendant; and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value." J.W. Thompson Co. v. Welles Prods. Corp., 758 P.2d 738, 745 (Kan. 1988).

The McGaffins claim that "even though [they] were indirect purchasers, MIWD benefited economically from the Plaintiffs' purchase of a residence, which incorporated MIWD's defective Windows." Pls.' Resp. 16. It is true that a "claim for unjust enrichment under Kansas law . . . does not depend on privity." Gonzalez, 489 F. Supp. 2d at 1249 ("Because a benefit may be conferred indirectly, the Court cannot conclude

that plaintiffs did not confer a benefit on defendants when they purchased defendants' beverage products through local retailers."). Even if the allegations regarding conferral of a benefit were sufficient, the McGaffins have not plausibly asserted that MIWD had an appreciation or knowledge of the benefit. Therefore, the court dismisses this claim.

### H. Declaratory Judgment

Finally, MIWD seeks to dismiss the McGaffins' claim for declaratory relief. Such relief would be inappropriate at this stage, as the merits of the McGaffins' substantive claims have not been adjudicated. The court dismisses the claim.

## IV.   CONCLUSION

Based on the foregoing, the court **GRANTS IN PART AND DENIES IN PART** defendant's motion to dismiss and **DISMISSES WITHOUT PREJUDICE** plaintiffs' claims for unfair trade practices, fraudulent misrepresentation, fraudulent concealment, unjust enrichment, and declaratory relief. The court further **GRANTS IN PART AND DENIES IN PART** defendant's motion to strike. Plaintiffs shall have leave to file an amended complaint within 14 days of the filing of this order.

**AND IT IS SO ORDERED**.

_____
**DAVID C. NORTON
UNITED STATES DISTRICT JUDGE**

**December 27, 2012
Charleston, South Carolina**